IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:25CR108 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY DUSENBERY, | ) | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33 [ECF 114] |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Kristen Rolph, Assistant United States Attorney, and hereby submits the following Response in Opposition to Defendant Larry Dusenbery's Motion for a New Trial. (R. 122: Defendant's Motion for a New Trial Pursuant to Federal Rule of Criminal Procedure 33, PageID 652-656). For the reasons set forth below, Defendant's motion should be denied.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Kristen Rolph
Kristen Rolph (MI: P75375)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(330) 761-2025
(216) 522-7499 (facsimile)
Kristen.Rolph@usdoj.gov

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

At trial, the government presented the following witnesses: United States Postal Inspector and Case Agent Dylan Lewis, United States Postal Inspector Mike Adams, FBI Analyst Christina Suther, Analyst Andrew Charter, DEA Special Agent Shaun Moses and DEA Special Agent Keon Hemerlein. During the defense case, Dusenbery presented the following witnesses in addition to testifying in his own defense: Kim Blank, Jeff Davis and Jake Burch.

The following facts were established by the evidence presented at trial.

The United States Postal Inspector Service ("USPIS") regularly investigates suspicious parcels for the possible presence of controlled substances. On February 12, 2025, USPIS Inspector Lewis identified a suspicious parcel while reviewing Postal Service databases. The parcel was mailed on February 11, 2025, and addressed to "K Blankenship" at 3xxx Longfield Road, Ravenna, Ohio 44266 with a return address of "T Blankenship", at 11372 Lee Ave, Apt. 712, Adelanto, California 92301 (hereinafter "the Subject Parcel"). The Subject Parcel was a Priority Mail package paid in cash and weighed ten pounds thirteen ounces. Agents made inquiries with CLEAR, a reliable law enforcement database, concerning the sender name "T Blankenship" and discovered it was fictitious. Agents queried the return address in CLEAR and determined that it was also fictitious. The return address of both 11372 Lee Ave, Adelanto, California 92301 and 11372 Lee Ave, Apt. 712, Adelanto, California 92301 do not exist. When investigators searched "K Blankenship" and the delivery address, investigators identified an individual with a similar name, Kim Blank, associated with the Longfield address.

Several attributes of the Subject Parcel raised investigators' suspicions including but not limited to, origin location, method of mailing, size and fictitious sender and delivery names and addresses. On February 13, 2025, Inspector Lewis traveled to Ravenna, Ohio to retrieve the parcel from the mail stream for further investigation. Later that same day, a canine "dog sniff"

lineup was conducted and a certified narcotic detection canine gave a positive alert indicating the presence of controlled substances in the Subject Parcel. Pursuant to a federal search warrant, United States Postal Inspectors seized and searched the Subject Parcel. Inside, investigators found a duct-taped plastic container surrounded by wood shavings. The methamphetamine was found concealed inside the plastic container, buried in wood shavings and wrapped in plastic. The Subject Parcel contained 2240.9 grams of 99% pure methamphetamine.

In preparation for the controlled delivery, law enforcement removed the methamphetamine and replaced it with a sham substance. The "sham" drugs were then repackaged inside the Subject Parcel in a similar manner as the methamphetamine was discovered. Electronic monitors were also placed inside the Subject Parcel used to track the package utilizing GPS as well as detect motion or light. A "break-wire" was also installed to send an alert if the package was opened. The break-wire was installed in a way that it would provide an alert if the plastic container within the box was manipulated in some way. Investigators arranged to deliver this package to Kim Blank's residence in a coordinated law enforcement effort.

On February 18, 2025, investigators from the USPIS, the DEA, and Portage County Sheriff's Office conducted a controlled delivery of the Subject Parcel to its delivery address on Longfield Road, in Ravenna, Ohio. After an undercover USPIS Inspector delivered the Subject Parcel, Kim Blank retrieved the parcel from the porch and brought it inside the residence. The Subject Parcel was delivered around 1:20 p.m., and by 7:55 p.m. had not given any alert indicating it was opened. Shortly thereafter, investigators executed a search warrant at the delivery address and encountered Blank. At that time, she was cooperative and agreed to speak with law enforcement and also provided consent to search her cell phone. Inside Blank's

residence, she possessed two baggies containing a crystalline substance located on a mirror on the dining room table. She later admitted she is a methamphetamine user and admitted to drug use.

At trial, Blank was called as a defense witness. She denied most of her prior statements made to law enforcement. As a result, the government played her recorded interview during trial as impeachment. In that interview, Blank initially denied any involvement with the Subject Parcel and explained that she wrote "return to sender" on the box and placed in in the garage to return to the post office. As the interview progressed, Blank confessed to her involvement and knowledge of the package. She described the instructions she received from the Defendant and disclosed that Defendant's apartment was the intended destination for the parcel. Blank provided her address to Dusenbery to receive the package, and she was going to deliver the package to Larry Dusenbery as instructed. Dusenbery instructed Blank to receive the package, write "return to sender" on it and then wait 12 hours before delivering it to him. Blank stated that she planned to deliver the Subject Parcel to Larry Dusenbery, after that time lapsed, as the parcel was intended for him. Blank stated that Dusenbery lived in an apartment complex in Kent, Ohio.

Instead, Blank testified that she worked for Dusenbery and that she believed the package contained legal mail. She testified that she regularly ran errands for him and began receiving packages for his legal business. She further testified that she received the tracking number for the Subject Parcel from one of Dusenbery's legal clients in California and she put that tracking number in Defendant's apartment.

While at Blank's residence, investigators recorded calls between Blank and the Defendant discussing when Blank planned to arrive at Dusenbery's apartment the next day. In

one call, Dusenbery emphasized the importance of Blank arriving by 11a.m. because he had to participate in a Facetime call with the sender of the package.

On February 19, 2025, investigators conducted a second controlled delivery of the package; this time, the delivery was to Dusenbery's residence at 3xx E. Summit Street, Apt X, in Kent, Ohio. Prior to conducting this controlled delivery, investigators obtained a court authorized search warrant for the Summit Street residence. Blank agreed to cooperate with law enforcement to deliver the package to Defendant Dusenbery. She was fitted with video and audio recording equipment prior to delivering the package to Dusenbery's apartment. Blank entered Dusenbery's apartment with the package and set it down near the front door. Dusenbery appears on the controlled delivery video and the two have a brief conversation about the Subject Parcel and a FaceTime call Dusenbery needs to make to the senders because in Dusenbery's words, "*they want, they know it's delivered, they follow it. Then they want me to see— show 'em my FaceTime that I got so there's no bullshit, you know what I mean?*" Blank then departed Dusenbery's apartment. After Dusenbery opened the Subject Parcel and activated the break-wire, investigators executed the search warrant at Dusenbery's residence and located the Subject Parcel and two additional suspicious packages. Dusenbery was the only person in the apartment and was subsequently arrested.

Kim Blank used her cell phone to regularly communicate with Dusenbery between February 10, 2025, and February 19, 2025. Dusenbery's two phone numbers, 330-235-2266 (Samsung) and 330-203-3163 (iPhone) were saved in Blank's cell phone under the contact "L". Blank willingly provided consent allowing investigators to search her cell phone. Investigators reviewed communications, both calls and text messages, between Blank and Dusenbery on the days leading up to and including the days of the controlled deliveries. On February 18 and 19,

2025, the days of the controlled deliveries, Defendant sent the following series of text messages to Blank:

| Date | From | To | Content |
|---|---|---|---|
| 2/18/2025 | Dusenbery | Blank | Will you please start answering my texts and calls! I have to answer to people and you're not taking this serious enough!!!! |
| 2/18/2025 | Dusenbery | Blank | Make sure you're here by ten. I have to see someone at 11. So don't be late!!!! |
| 2/18/2025 | Dusenbery | Blank | Plus I'll take care of you then too!!! |
| 2/18/2025 | Dusenbery | Blank | Look I'm going to do another immediately while I still can. Okay? Let me know now if it's okay because I need to call him right now!!!! |
| 2/19/2025 | Dusenbery | Blank | Make sure you're here by 10. My people are calling I have to answer to them by 11. |
| 2/19/2025 | Dusenbery | Blank | Call me. I need you here by 10. I need you to answer me. |

During Dusenbery's arrest on February 19, 2025, law enforcement seized three cellphones and sought court-authorized search warrants to search his Samsung and iPhone. The extraction reports from the Samsung cell phone (330-235-2266) and the iPhone (330-203-3163) contained the following evidence:

- From February 10, 2025, to February 19, 2025, Dusenbery exchanged approximately 25 calls with Blank (phone number 330-301-1092) utilizing both phones.

- The text messages discovered on Kim Blank's phone were also found in Dusenbery's Samsung or iPhone.

- On February 14, 2025, the expected delivery date of the Subject Parcel, the following chat thread occurred between Defendant and email address tonyhilt121@icloud.com:

tonihilt121@icloud.com: $Tone124Loc
Larry Dusenbery: If I don't do it this evening I'll do it tomorrow. waiting on the mail
tonihilt121@icloud.com: Ok

Investigators called Dusenbery's phone number, 330-235-2266, with a government issued cell phone prior to entering the phone into evidence. The Samsung cell phone that was seized from Dusenbery indicated an incoming call from the government issued cell phone—confirming the Samsung phone recovered from Dusenbery's person was the phone Dusenbery used to track the package and communicate with Blank. In addition, investigators found information showing that Dusenbery was tracking the delivery of the methamphetamine parcel.

After Dusenbery was arrested, agents reviewed surveillance footage from the Adelanto, California post office from the date and time the Subject Parcel was mailed. In the video, a heavier set black male wearing a red-lined black zip up hoodie mailed the Subject Parcel and paid cash for the postage. Investigators identified the sender's truck and license plate and utilizing law enforcement databases, determined the vehicle was registered to Tonia Hilt, in Adelanto, California. Further, Tony Hilt is associated with 113xx Lee Ave, Adelanto, California which closely resembles the fictitious return address used on the Subject Parcel. The same red-lined black zip up hoodie was also seen in Tony Hilt's social media. A review of Tony Hilt and Defendant's Cash App records revealed a completed transaction from Defendant to Tony Hilt. On February 15, 2025 at approximately 19:22 EST, Hilt's records reveal that a contact named "Larry Dusenbery" sent Hilt $1,200 via Cash App.

According to USPS records, IP addresses located in both Ohio and California queried the delivery status of the Subject Parcel. A Verizon IP address, later determined to belong to Defendant Dusenbery, tracked the package 27 times between February 12, 2025, and February 18, 2025. The Verizon IP address, attributed to Marysville, Ohio, was associated with a Samsung cellphone assigned call number 330-235-2266. This was later determined to be Defendant Dusenbery's phone and found in his possession. Two California IP addresses returned to a T-

Mobile subscriber Tony Hilt, 113xx Lee Ave, Adelanto, California, assigned call number 424-270-3844. Tony Hilt's two California IP addresses were utilized to query the delivery status of the Subject Parcel 135 times between February 12, 2025, and February 14, 2025.

One of the suspicious parcels located in Dusenbery's apartment during the search warrant execution was addressed to "Kenny Hopkins", 3xx E Summit St, Apt X, Kent, Ohio ("Parcel 2"). Similar to the Subject Parcel, this parcel also had the phrase "return to sender" written on the package. Parcel 2 was delivered on February 2, 2025, and weighed four pounds. It was left at the front door; no signature was requested. The sender was listed as "Staples Promotional Products", 12462 Natural Bridge, Bridgeton, Missouri. An open-source search revealed that address is not linked to Staples.

On June 11, 2026, a jury returned a guilty verdict, finding Defendant Larry Dusenbery guilty of Attempted Possession with Intent to Distribute Methamphetamine. (R. 109: Verdict, PageID 638-639). The trial lasted four days and after a few hours of deliberations, the jury returned a guilty verdict on the single count charged in the indictment. Following the jury's guilty verdict, Defendant filed a motion requesting a 60-day extension of time to file the present motion. (R. 112: Motion, PageID 646-648). That motion was granted and Dusenbery filed the present motion on August 3, 2026.

Dusenbery now moves the Court for a new trial under Rule 33. Fed. R. Crim. P. 33(a). He faces an uphill battle to succeed on this claim. In his motion, Dusenbery spends most of his time complaining about what evidence was not presented by the government and why that makes the entire presentation of evidence at trial misleading. His arguments fall short of the legal standard he must establish for the remedy he seeks. Defendant's attempt to present a legal business defense in this case was not successful at trial and is not successful now.

## II. LAW AND ARGUMENT

### A. Legal Standard

A motion for a new trial is governed by Rule 33 of the Federal Rules of Criminal Procedure, which provides that the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Rule 33, the Court begins its analysis by presuming the jury verdict is valid. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citations and quotations omitted); *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). Before making its decision, the court must consider competing principles; it must scrutinize the record and ensure that a "miscarriage of justice" did not occur and the court must respect the role of the jury and ensure that evidence-supported convictions are upheld. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). Here, the court is permitted to "'consider the credibility of witnesses and the weight of the evidence' to ensure there ha[s] not been a miscarriage of justice." *Paulus*, 894 F.3d at 278 (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). The Court sits as the proverbial "thirteenth juror" when considering a Rule 33 motion for a new trial. *See United States v. Ruiz Solorio*, 337 F.3d 580, 603 n.6 (6th Cir. 2003). Even so, only in "extraordinary circumstances," when the "verdict exceeds the bounds of reasonableness", should the district court order a new trial. *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007). "The verdict [is not] unreasonable simply because different inferences could have been drawn or because other results are more reasonable." *United States v. Lyimo*, 574 F. App'x 667, 672 (6th Cir. 2014) (quoting *Porter v. Lima Mem'l Hosp.*, 995 F.2d 629, 635 (6th Cir. 1993)); *see also Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004) ("[T]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable."). When the motion is primarily based on the manifest weight of the evidence, as is the case here, the defendant bears the burden to

demonstrate an "extraordinary circumstance where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593 (citations and quotation marks omitted); *Ashworth*, 836 F.2d at 266.

Courts do not look favorably upon motions for new trials, especially those based on the weight of the evidence. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976); *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). They are "granted only with great caution." *Garner*, 529 F.2d at 969.

### B. The evidence and Arguments Dusenbery Asserts in His Motion Fail to Meet His Burden to Demonstrate an Extraordinary Circumstance Exists

Dusenbery's entire argument regarding his text messages (Defendant's Exhibit A, PageID 657-659) assumes these text messages were in his cell phone extraction and therefore, in the government's possession, but they were not. Defendant's phone was seized during the controlled delivery at his apartment on February 19, 2025. His phone was subsequently forensically examined, and a Cellebrite report created. Defendant was released on bond and remained on bond during the pendency of the case. Defendant's seized cell phones remained in law enforcement custody. It appears Dusenbery got a new phone sometime after the search warrant execution as Exhibit A begins with him asking, "Who's this?" (R. 114-1: Defendant's Exhibit A, PageID 657). Dusenbery was indicted with Attempted Possession with Intent to Distribute Methamphetamine on March 18, 2025. (R. 11: Indictment, PageID 30-31). The time stamp in the messages Dusenbery claims the government withheld indicates these messages were sent on May 3, 2025, at 4:19 p.m., over a month *after* he was indicted for attempted drug trafficking. (R. 114-1: Defendant's Exhibit A, PageID 657). Not only does Defendant's claims that the government distorted the evidence fail, the timing of the text messages makes Exhibit A inherently unreliable. It is not unreasonable to assume Defendant—knowing he was federally

charged for attempting to receive a methamphetamine package—tried to generate some text conversations to incorporate his defense. This falls far short of the legal standard required to grant a new trial.

Additionally, Dusenbery asserts the government presented incomplete evidence only choosing messages that supported the theory that Dusenbery is a drug dealer. The government did limit the messages from the cell phone extraction to the week prior to the controlled delivery, February 10, 2025, to February 19, 2025. That was the relevant time period to the charge. The government has no duty to present Dusenbery's defense at trial, specifically any Legal Shield evidence.

Defendant also attached Exhibit B to his motion but neglected to mention or refer to it or articulate its relevance to his claims. (R. 114-2: Exhibit B, PageID 660-675). Exhibit B is labeled on the docket as "Troy Hopkin's Commissions." In any event, although Dusenbery asks this Court to consider a new text exchange with his girlfriend and evidence showing his or Troy Hopkin's Legal Sheild activity, this Court may not consider facts that were not admitted into evidence as part of its Rule 33 "manifest-weight" analysis. Rather, in assessing the weight and credibility of the witnesses and evidence, the court should limit its assessment to evidence "produced at trial." See *Ashworth*, 836 F.2d at 266. Simply put, Dusenbery cannot demonstrate that his is the type of "extraordinary circumstance" that warrants post-trial relief in the form of a new trial.

## III. CONCLUSION

The United States presented sufficient evidence—and the jury so found—that Dusenbery, attempted to possess with the intent to distribute methamphetamine on February 19, 2025. Defendant has failed to meet his heavy burden of demonstrating that the jury verdict was against the manifest weight of the evidence under Federal Rule of Criminal Procedure 33. Accordingly, the motion should be denied.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Kristen Rolph

Kristen Rolph (MI: P75375)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(330) 761-2025
(216) 522-7499 (facsimile)
Kristen.Rolph@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September 2026, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system. A copy of this filing will also be sent by regular U.S. Mail to:

LARRY DUSENBERY
340 E. SUMMIT STREET, APT. D
KENT, OH 44240

/s/ Kristen Rolph
Kristen Rolph
Assistant U.S. Attorney